UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at PIKEVILLE

CIVIL ACTION NO. 06-166-EBA

THELMA GREATHOUSE, *On behalf of the*
*Estate of Angela Greathouse-King and as*
*Guardian and Next Friend of Dennis Cameron King*,                    PLAINTIFF,

AND

ANTHEM HEALTH PLANS OF KENTUCKY, INC.            INTERVENING PLAINTIFF,

V.                               **MEMORANDUM OPINION**
                                 **& ORDER**

JOHN COUCH,                                                           DEFENDANT.

## I. INTRODUCTION

This matter has been referred to the undersigned by virtue of the parties' consent pursuant to 28 U.S.C. § 636(c)(1). [R. 16]. The matter is currently before the undersigned on the Defendant's Motion for Summary Judgment. [R. 20]. Having considered the briefs of the parties, and for the reasons set forth within, this Court orders that the Defendant's Motion for Summary Judgment be denied in part and granted in part.

## II. FACTUAL & PROCEDURAL BACKGROUND

The following facts are essentially uncontested. This case arises from the execution of a search warrant on the night of May 17, 2004. The search warrant was being executed by members of the Appalachian HIDTA Task Force, and included members of multiple law enforcement agencies. The officers present for the execution of the search warrant included: Kentucky State

Police Officers Chris Fugate, Randy Combs and Bruce Kelly; Hazard Police Officer Russell Dishmer; and the Defendant, Perry County Deputy Sheriff John Couch. [R. 20, Aff. of John Couch at 1-2]. The target of the search warrant that night was the home of Dennis and Angela King. The Kings were both at home on the night of May 17, along with their fourteen-year old son Dennis Cameron King. [R. 34, Dep. of Dennis King, 5:19-6:4]. During the execution of the search warrant, shots were fired by Angela King and the Defendant. Mrs. King was hit in the side of the head, and died in December 2005 as a result of her injuries. [Id. 4:15-18; 10:5-6].

What happened during the execution of the search warrant is substantially disputed by the parties. When questioned in his deposition, Dennis King stated that there was a "loud thump" on his door, which caused his wife to run back to the bedroom. [Id. at 7:1-2]. He claims that the Defendant, John Couch, then entered the home with a gun, and ordered Mr. King to get on the floor; Mr. King states that the Defendant was wearing a white T-shirt and jeans, and that he did not identify himself as a police officer. [Id. at 7:5-22; 8:14-16]. As this was happening, Mrs. King returned:

> A: My wife had already gone to the bedroom and she was back through where we was at and I was between the two of them and I was looking back at her and he had a gun out and I knew I had a gun in the bedroom and I was hollering, no, no, no to both of them and my wife had her head turned to the right side and she fired the gun into the air, in the ceiling.
>
> **********
>
> Q: Who was closer to the door, you or Angela?
> A: I was.
> Q: And then Angela shot a gun up in the air after this man came in, correct?
> A: Correct. There was no way she could have seen him because the doorway was there (indicating). I'm 6'4." The guy that came in was like five foot, he was short, so the only thing she probably saw was the gun.
> Q: Did the gentleman with the gun shoot your wife?
> A: Yes.
> Q: How many times did he shoot?

2

  A:  He shot twice. He hit her once.

[Id. at 7:24-8:6; 8:20-9:7].

  This account differs significantly from that of the Defendant. The Defendant states that the officers arrived at the home and announced "state police - search warrant." [R. 20, Aff. of John Couch, at 2]. Once the officers entered the home, he claims:

> As the officers had Dennis King to get on the floor to effectuate his arrest and for their protection, Angela Greathouse King stepped out of the back bedroom and shot twice barely missing my head. Thereupon I returned fire striking Ms. King in the head with one bullet.

[Id.]. This account of the events was also endorsed by Chris Fugate, another officer on the scene. [R. 20, Aff. of Chris Fugate].

  As a result of the incident on the night of May 17, 2004, the Plaintiff, the Administratrix of Angela King's estate, and the guardian of Dennis Cameron King, filed suit in Knott Circuit Court. [R. 1]. Based on claims brought under 42 U.S.C. § 1983, the Defendant removed the suit to the United States District Court for the Eastern District of Kentucky. The Defendant filed a Motion for Summary Judgment in June of 2007 [R. 20], and both parties were permitted to supplement their filings based on the deposition of Dennis King. [R. 29]. The parties having supplemented their filings, this matter is now ripe for adjudication.

### III. SUMMARY JUDGMENT STANDARD

  Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The party moving for summary judgment bears the initial

responsibility of informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

While the court must view all facts in the light most favorable to the non-moving party and give him or her the benefit of all reasonable inferences that can be drawn from the facts, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), the non-moving party cannot avoid summary judgment merely by resting on the pleadings. See Celotex, 477 U.S. at 324. Instead, the non-moving party must come forward with "specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In other words, "the nonmoving party must present 'significant probative evidence' to show that 'there is [more than] some metaphysical doubt as to the material facts.'" Dixon v. Gonzales, 2007 WL 750532 (6th Cir. 2007) (citing Moore v. Phillip Morris Cos., 8 F.3d 335, 339-40 (6th Cir. 1993)). Thus, where the record, taken as a whole, cannot lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. Matsushita, 475 U.S. at 586-87.

Additionally, the trial court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact." Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479-80 (6th Cir. 1989). Rather, "[t]he nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." In re Morris, 260 F.3d 654, 665 (6th Cir. 2001).

4

## IV. ANALYSIS

The Plaintiff has brought claims against the Defendant under 42 U.S.C. § 1983, which provides a civil action for damages against any person who, under color of law, deprives a citizen of "any rights, privileges, or immunities secured by the Constitution..." Id. The Plaintiff claims that the Defendant's actions on the night of May 17, 2004, violated the Fourth and Eighth Amendments of the United States Constitution. The Defendant seeks summary judgment on the ground that he is entitled to qualified immunity on the Plaintiff's claims. [R. 20].

Qualified immunity "is an immunity from suit rather than a mere defense to liability." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). Qualified immunity is intended to shield a police officer from suit "when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." Brosseau v. Haugen, 543 U.S. 194, 198 (2004); see also, Malley v. Briggs, 475 U.S. 335 (1986) ("if officers of reasonable competence could disagree on this issue, immunity should be recognized." Id. at 341).

The Supreme Court has stated that in any case involving a question of qualified immunity, the court must engage in a two-part inquiry. The initial question is: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier v. Katz, 533 U.S. 194, 201 (2001). Assuming that this inquiry is satisfied, the second step is to determine if the constitutional right was "clearly established." Id. at 202. To determine whether a constitutional right is clearly established, the proper inquiry is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id.; see also, Anderson v. Creighton, 483 U.S. 635 (1987). In order to determine whether summary judgment is appropriate, the Court will engage in the qualified immunity analysis

as it applies to each of the Plaintiff's constitutional claims.

(1) <u>Violation of Fourth Amendment "Knock and Announce" Rule</u>

In his Motion for Summary Judgment, the Defendant seeks to have all of the Plaintiff's claims under the Fourth Amendment dismissed. [R. 20]. The Plaintiff claims that the Defendant should be liable for entry into the home, because of his violation of the Fourth Amendment's "knock and announce" requirement. [R. 25 at 3-4]. This Court holds that because there is a genuine issue of material fact regarding whether there was a violation of the knock and announce requirement, summary judgment is inappropriate.

The Fourth Amendment provides, in part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. Amend. IV. The protections of the Fourth Amendment have been incorporated into the Fourteenth Amendment, and are thus applicable to the states. See <u>Mapp v. Ohio</u>, 367 U.S. 643 (1961); <u>Hall v. Shipley</u>, 932 F.2d 1147 (6th Cir. 1991). As evident from the language of the amendment, and subsequent interpretation, the analysis of any search under the Fourth Amendment turns on whether it is "reasonable."

In <u>Wilson v. Arkansas</u>, 514 U.S. 927 (1995), the Supreme Court held that the knock and announce principle, the common law development of which was carefully traced by the Court, was "an element of the reasonableness inquiry under the Fourth Amendment." <u>Id</u>. at 934.  The knock and announce rule "serves to respect the sanctity of a person's home by affording notice to those inside so that they may open the door peaceably and without the needless destruction of property [it also] avoid[s] the possibility of a violent confrontation if those inside mistook the police for intruders." <u>United States v. Spikes</u>, 158 F.3d 913, 925 (6th Cir. 1998). Compliance with the rule is not tested

by whether any "magic words" were spoken by the police, but whether those inside the home have been alerted to the presence and purpose of the police. Id. If the inhabitants have been properly alerted, the police must then wait a reasonable period of time before making a forced entry. United States v. Favors, 75 Fed. Appx. 377, 381 (6th Cir. 2003).

The Court in Wilson made it clear that the knock and announce requirement was not absolute, and that "law enforcement interests may also establish the reasonableness of an unannounced entry." Wilson, 514 U.S. at 935-37. The reasonableness of such an unannounced entry must be determined on a case-by-case basis. Richards v. Wisconsin, 520 U.S. 385, 394 (1997). The Richards court, discussing the validity of "no-knock" entries, held:

> In order to justify a "no-knock" entry, the police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence.

Id.; see also, Ingram v. City of Columbus, 185 F.3d 579, 588 (6th Cir. 1999).

In the present case, there is a factual disagreement as to whether or not the "Defendant's entry into the home was an unannounced entry by an individual not identified as a police officer." [R. 25 at 4]. The Defendant's affidavit states that: "Upon arrival at the plaintiff's home Randy Combs was in KSP uniform and the plaintiffs were advised, 'state police - search warrant.'" [R. 20, Aff. of John Couch at 2]. This runs counter to the affidavit of Dennis Cameron King, who stated that he "never heard the men announce or tell who they were." [R. 25, Aff. of Dennis Cameron King at 1]. The facts as described by the Defendant are also inconsistent with those described by Dennis King, who stated that though someone banged on the door, the Defendant never identified himself as a police officer, nor was he wearing anything that would identify him as such. [R. 34, Dep. of Dennis King,

7

7:5-22; 26:17-27:5].

Engaging in the two-part qualified immunity analysis described *supra*, the Court must first determine whether the facts just described, viewed most favorably to the Plaintiff, would violate a constitutional right. Saucier, 533 U.S. at 201. Under this view of the facts, the Defendant never identified himself as a police officer, and thus did not comply with the knock and announce requirement. Furthermore, the limited evidence developed in the record does not show exigent circumstances that would permit the officers to effectuate a no-knock entry. The burden of proof rests with the Defendant to show the existence of exigent circumstances. Jordan v. Murphy, 145 Fed. Appx. 513, 528 (6th Cir. 2005); United States v. Bates, 84 F.3d 790, 794 (6th Cir. 1996). The Defendant does not argue the existence of any exigent circumstances that would have permitted a "no-knock" entry. Absent a showing of an exigency, the facts of this case, viewed most favorably to the Plaintiff, are sufficient to state a violation of the Fourth Amendment.

Since the facts are sufficient to state a constitutional violation, the Court must proceed to the second part of the qualified immunity inquiry, namely, whether the right that was allegedly violated was "clearly established." Saucier, 533 U.S. at 202. The knock and announce rule is clearly established law for purposes of qualified immunity. Smith v. Stone, 2000 WL 687672 at *9 (6th Cir. 2000); see also, Jones v. Wilhelm, 425 F.3d 455, 469 (7th Cir. 2005); Holland ex rel Overdorff v. Harrington, 268 F.3d 1179, 1193 (10th Cir. 2001). Since the knock and announce requirement is clearly established law, of which a reasonable officer would be aware, this Court "must determine 'whether an objectively reasonable officer, confronted with similar circumstances, could have reasonably believed that exigent circumstances existed' to justify non-compliance with the knock and announce rule." Dickerson v. McClellan, 101 F.3d 1151, 1158 (6th Cir. 1996) *citing* Hall v.

Shipley, 932 F.2d 1147, 1151 (6th Cir. 1991).

The Court finds that summary judgment is not appropriate as to this issue because an objectively reasonable officer confronted with the facts developed in this record could not have believed that exigent circumstances existed that would have permitted a violation of the knock and announce rule. The Sixth Circuit has cautioned that courts should "closely scrutinize officers making a forced entry without first adequately announcing their presence and purpose." United States v. Bates, 84 F.3d 790, 795 (6th Cir. 1996). There are exceptions to the knock and announce requirement, the most important of which are officer safety and the imminent destruction of evidence. United States v. Smith, 386 F.3d 753, 760 (6th Cir. 2004). Though there are exceptions to the requirement, "it is the solemn duty of the judicial system to ensure the right of each citizen to be free from unreasonable searches by forcing the government to prove the existence of exigent circumstances before excusing the knock and announce requirement." Id. at 795-96 *discussing* United States v. Nabors, 901 F.2d 1351, 1354 (6th Cir. 1990).

The Defendant has failed to prove the existence of exigent circumstances in the present case; furthermore, when viewing the evidence in the light most favorable to the Plaintiff, there is no evidence that would lead a reasonable officer to believe that exigent circumstances existed. The Defendant has not stated that he believed that there were weapons in the home that would endanger himself or other officers, nor was there evidence that the occupants of the home had violent criminal histories.[1] Finally, any contention that the police feared the destruction of evidence is without merit.

---

[1] "Evidence that firearms are within the residence, by itself, is not sufficient to create an exigency to officers when executing a warrant." Bates, 84 F.3d at 795. Rather, the government must show that "they possessed information that the suspect was armed and likely to use a weapon or become violent." Id.

As in Bates, where the officers located fifteen kilograms of powder cocaine, it would have been unreasonable for the police to believe that complying with the knock and announce rule would have given the Kings opportunity to dispose of the twenty-three pounds of marijuana that was located during the search of the residence. Bates, 84 F.3d at 796-97.

There are genuine issues of material fact that preclude entry of summary judgment on the Plaintiff's Fourth Amendment claim regarding the knock and announce violation. As stated by the Sixth Circuit, "when the legal question of immunity is completely dependent upon which view of the facts is accepted by the jury, the jury becomes the final arbiter of a claim of immunity." Bouggess v. Mattingly, 482 F.3d 886, 888 (6th Cir. 2007). When viewing the facts in the light most favorable to the Plaintiff, the Plaintiff states a violation of a clearly established constitutional right, and under said facts, no objectively reasonable officer could have believed that he was justified in ignoring the knock and announce requirement.

(2) Violation of Fourth Amendment Prohibition Against Use of Excessive Force

The Plaintiff states a second claim under the Fourth Amendment, for the alleged use of excessive force when the Defendant shot Angela King. The Defendant also claims that he is entitled to qualified immunity as to this claim, on the basis of the fact that the Defendant was justified in using deadly force against Angela King, as he was merely defending himself. [R. 20].

As with the knock and announce claim, there are major factual disputes between the parties as to what actually occurred. The Plaintiff claims that after the Defendant came into the home, Angela King emerged from the bedroom with a gun and fired it into the ceiling. [R. 34, Dennis King Dep. 7:15-8:6]. The Defendant then shot twice at Mrs. King, hitting her once in the head. [Id. 9:4-10:19]. The Defendant argues that Mrs. King stepped out of the bedroom and fired twice, barely

missing his head. At that time, he returned fire and hit Mrs. King with one shot. [R. 20, Aff. of John Couch at 2]. For purposes of this analysis, the Court will accept the facts as stated by Mr. King in his deposition, as they are the most favorable to the Plaintiff.

In arguing that the motion for summary judgment should be denied, the Plaintiff states the following:

> The claim for excessive force under the Fourth Amendment is analyzed under a totality of the circumstances test. [Dickerson v. McClellan, 101 F.3d 1151, 1161 (6th Cir. 1996)]. In this case, the Defendant created the situation through his unannounced entry that ultimately led to the shooting and subsequent death of Angela King. While there can be no dispute that the police officers are entitled to defend themselves...the Defendant cannot use his right to defend himself as a justification, when he created the situation that led to the shooting through his unconstitutional entry.

[R. 25 at 4-5]. The Plaintiff correctly cites a seminal case in this circuit, but the case does not support the Plaintiff's ultimate conclusion. The Dickerson court, when faced with the same Fourth Amendment issues presented in the present case, stated the following: "Although both claims are premised on Fourth Amendment violations, the violation of the knock and announce rule is conceptually distinct from the excessive force claim." Dickerson, 101 F.3d at 1162.

It is the law of this circuit that the analysis of the excessive force claim must be independent of the knock and announce violation. "The 'segmenting' rules of Boyd [v. Baeppler, 215 F.3d 594 (6th Cir. 2000)] and Dickerson divided the analysis of possible erroneous actions taken by the officers prior to shots being fired." Claybrook v. Birchwell, 274 F.3d 1098, 1104 (6th Cir. 2001). This segmenting analysis even occurs when events transpire over a brief period of time. Id. at 1102 (police arrival and shootout all transpired in one or two minutes). Sixth Circuit precedent requires that a court reviewing an excessive force claim must disregard the events leading up to the alleged violation and "focus on the split-second judgments made immediately before the officer used

11

allegedly excessive force." Livermore ex rel Rohm v. Lubelan, 476 F.3d 397, 408 (6th Cir. 2007). In the present case, the Court cannot, therefore, consider the alleged knock and announce violation when analyzing the excessive force claim.

The Plaintiff's excessive force claim will be determined by whether the circumstances permitted the officer to use deadly force against Mrs. King. The general rule about use of deadly force is that an officer can use deadly force if "the officer has probable cause to believe that the suspect poses a significant threat of death or serious injury to the officer or others." Tennessee v. Garner, 471 U.S. 1, 3 (1985). Subsequent cases have noted that other factors to be considered include the severity of the crime at issue, and whether the victim was resisting arrest or attempting to flee. See Graham v. Connor, 490 U.S. 386, 389 (1989). The ultimate inquiry remains a question of the overall reasonableness of the officer's actions based on the circumstances at the moment of the shooting. Dickerson, 101 F.3d at 1162.

In the context of the present case, the primary question becomes "whether [the Defendant] had an objectively reasonable belief that [the victim] posed an immediate threat of serious physical harm to him or others." Bouggess, 482 F.3d at 890. If a reasonable officer in the Defendant's position "would have known that shooting the victim was unreasonable in the circumstances" then the Defendant will not be entitled to qualified immunity. Sora v. City of Mt. Pleasant, 142 F.3d 898, 903 (6th Cir. 1998) *citing* Malley v. Briggs, 475 U.S. 335, 345 (1986). This objective reasonableness inquiry is based only upon the information known to the officer at the time of the use of force. Id.; see also, Boyd, 215 F.3d at 600. Therefore, information unknown to the officer at the time, such as the victim's subjective intentions or state of mind, are irrelevant to the inquiry. See Bell v. City of East Cleveland, 1997 WL 640116 (6th Cir. 1997).

This Court finds that the Defendant acted in an objectively reasonable manner when he used deadly force against Mrs. King, and is therefore entitled to qualified immunity as to this claim. When viewing the facts in the light most favorable to the Plaintiff, the situation the Defendant faced was a rapidly-developing situation where an armed individual emerged from a room, approximately twenty to twenty-five feet away from the officer, and discharged a firearm into the ceiling as the Defendant was attempting to control another suspect. [R. 34, Dennis King Dep. 17:17-18:8; 34:5-11].

The decision regarding the use of deadly force is informed by the Supreme Court's repeated admonitions that such decisions must be judged based on "the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham v. Connor, 490 U.S. 386, 396 (1989). The essence of this perspective is that the court must recognize that police officers are "often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force necessary in a particular situation." Id. at 397. In a tense and rapidly developing situation where a firearm has been discharged within the same small room as the officer, a reasonable officer would have "an objectively reasonable belief that [the victim] posed an immediate threat of serious physical harm to [the officer] or others." Bouggess, 482 F.3d at 890.

To rule otherwise under these facts would require the conclusion that an objectively reasonable officer in these circumstances would not fire upon the individual unless and until the individual actually fired directly upon the officer or others. Garner and its progeny merely establish that officers must have probable cause to believe there is an *imminent* threat of serious harm; it does not require that the police wait until that threat has materialized by a suspect making a serious, physical attempt to harm the officer. The case law is replete with examples where the courts have

supported an officer's use of deadly force, even if the victim did not actually cause physical harm to the officer. See, e.g., Estate of Sowards v. City of Trenton, 125 Fed. Appx. 31 (6th Cir. 2005) (use of deadly force permissible where victim pointed gun through doorway of apartment);[2] Smith v. Freland, 954 F.2d 343 (6th Cir. 1992) (deadly force permissible to stop escape of driver who had led police on four-minute chase through populated area); Ford v. Childers, 855 F.2d 1271 (7th Cir. 1988) (en banc) (deadly force permissible to stop fleeing bank robber who officer reasonably believed was armed). These cases examine the non-exhaustive factors set forth in Graham and determined that the police were reasonable in finding that the victim posed an imminent threat to the officer or others. Simply put, the courts cannot require police officers to ignore the menacing firing of a weapon in close quarters, even if the victim subjectively intended it to be a mere "warning shot" and had not actually caused harm to the officer or others.

The Defendant's use of force was objectively reasonable under the circumstances, even when viewed in the light most favorable to the Plaintiff. Since the Court has found that the use of deadly force was reasonable under the circumstances, and thus no Fourth Amendment right was violated, there is no need to engage in the second step of the qualified immunity analysis.

Even assuming, *arguendo*, that the Plaintiff could prove the violation of a constitutional right, the right allegedly violated is certainly not "clearly established" under these facts. In order to show that an officer's use of excessive force violated a clearly established right, the Plaintiff must show that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he

---

[2] Most cases involving a suspect "threatening" the police with a firearm are situations where the victim purportedly aimed the firearm in the direction of the officers. See e.g., Id. at 38-39; Livermore, 476 F.3d at 405; Boyd, 215 F.3d at 598. The Court finds the present situation to be analogous to these precedents. The firing of a weapon in close quarters, particularly under these circumstances, can definitely be perceived by an officer to be a threatening action, even if the shots were not fired directly at the officer.

14

confronted." Saucier, 533 U.S. at 202. The Defendant's actions in the present case would not be clearly unlawful to a reasonable officer; rather, the Defendant's decision to fire upon an individual who had just fired a weapon would fall somewhere "in the hazy border between excessive and acceptable force." Brosseauu, 543 U.S. at 201. When an officer "reasonably misapprehends the law governing the circumstances" the officer should be granted qualified immunity. Id. at 198. The facts of this case lead to the conclusion that the Defendant would be entitled to qualified immunity on the Plaintiff's excessive force claim even if his actions were deemed to have violated the Fourth Amendment prohibition against the use of excessive force.

(3) Violation of Eighth Amendment Prohibition on Cruel and Unusual Punishment

In his Motion for Summary Judgment [R. 20], the Defendant argues that the Plaintiff failed to show any violation of the Eighth Amendment, based on the two-part test enunciated in Farmer v. Brennan, 511 U.S. 825 (1994). The Plaintiff did not respond to any of the arguments regarding the Eighth Amendment claim. Summary judgment is appropriate on this claim, as the facts of the case, viewed most favorably to the Plaintiff, do not state the violation of a constitutional right. Saucier, 533 U.S. at 201.

The Defendant's citation to the Supreme Court's decisions in Farmer, as well as Wilson v. Seiter, 501 U.S. 294 (1991), though accurate statements of the law, do not apply to the case *sub judice*. Rather, the cases cited by the Defendant involved prisoners challenging their conditions of confinement as violating the Eighth Amendment prohibition on cruel and unusual punishment. Likewise, the claims in Molton v. City of Cleveland, 839 F.2d 240 (6th Cir. 1988), involved a jail's liability for the death of a pretrial detainee. The Sixth Circuit reasoned that "[a] pretrial detainee's constitutional rights under the eighth and fourteenth amendments are denied by deliberate

15

indifference to his serious medical needs just as such indifference denies the corresponding rights of a convicted prisoner." Id. at 243.

The drafters of the Eighth Amendment were concerned with proscribing "tortures and other barbarous methods of punishment." Estelle v. Gamble, 429 U.S. 97, 102 (1976) (internal citation and punctuation omitted). An examination of Supreme Court precedent clearly shows that the protections of the Eighth Amendment are not properly invoked in the present case:

> [T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law. Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment.

Ingraham v. Wright, 430 U.S. 651, 671, n.40 (1977). Despite the Sixth Circuit's extension of Eighth Amendment protections to pretrial detainees in Molton, the Eighth Amendment is inapplicable to the facts before this Court, which involve an incident that occurred outside the formal adjudication process, and in which occurred prior to the decedent being placed in any form of pretrial detention. See Bass v. Robinson, 167 F.3d 1041, 1048-49 (6th Cir. 1999). Any constitutional concerns with the Defendant's conduct are properly analyzed under the Fourth Amendment and the Due Process Clause of the Fourteenth Amendment. See City of Revere v. Massachusetts General Hosp., 463 U.S. 239, 243-44 (1983).

The Eighth Amendment's protections do not apply to the facts of this case, and therefore the Defendant's Motion for Summary Judgment will be granted as to the Plaintiff's Eighth Amendment claims.

## V. CONCLUSION

Accordingly, and for the reasons stated above, it is hereby ordered that the Defendant's Motion for Summary Judgment [R. 20], be DENIED as to the Plaintiff's knock and announce claim under the Fourth Amendment, and GRANTED as to the Plaintiff's excessive force claims under the Fourth Amendment and all of the Plaintiff's claims under the Eighth Amendment.

Furthermore, within thirty (30) days of entry of this order, the parties shall provide the undersigned with mutually acceptable dates in June, July and August for trial of this matter.

Signed March 25, 2008.

Signed By:
*Edward B. Atkins*   EBA
**United States Magistrate Judge**